**United States District Court**
For the Northern District of California

1

2

3

4             UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7

8

9   DR. JAMES M. SWANSON,

10          Plaintiff,                    No. C 12-4579 PJH

11      v.                                **ORDER GRANTING MOTION TO
                                          DISMISS IN PART AND DENYING
12   ALZA CORPORATION,                    IT IN PART**

13          Defendant.
    _____/

14

15      Defendant's motion for an order dismissing the first amended complaint for lack of

16   subject matter jurisdiction and failure to state a claim came on for hearing before this court

17   on February 20, 2013.  Plaintiff Dr. James M. Swanson appeared by his counsel Gerald P.

18   Dodson and K. Brian Bathurst, and defendant ALZA Corporation ("ALZA") appeared by its

19   counsel Kurt G. Calia and Elena M. DiMuzio.  Having read the parties' papers and carefully

20   considered their arguments and the relevant legal authority, the court hereby GRANTS the

21   motion in part and DENIES it in part as follows and for the reasons stated at the hearing.

22                              **BACKGROUND**

23      Plaintiff Dr. James M. Swanson alleges that he invented what is claimed in three

24   patents that are presently assigned to defendant ALZA – U.S. Patent No. 6,930,129 B2

25   ("the '129 patent"); U.S. Patent No. 8,163,798 B2 ("the '798 patent"); and U.S. Patent No.

26   6,919,373 B1 ("the '373 patent").  In the present action, Dr. Swanson seeks an order

27   declaring that he is the true inventor of the three patents, and a directive to the

28   Commissioner of the United States Patent and Trademark Office ("PTO") instructing him to

**United States District Court**

For the Northern District of California

1   issue a certificate of correction; or, in the alternative, seeks a declaratory judgment of

2   invalidity and unenforceability.

3          Dr. Swanson is Emeritus Professor of Pediatrics at the University of California Irvine.

4   He began his employment with the University of California ("UC") on June 1, 1980.  At that

5   time, per the standard practice at most institutions of higher learning in the U.S., Dr.

6   Swanson agreed to assign all rights to his inventions to the Regents of the University of

7   California ("the Regents").  In return for his assignment, Dr. Swanson was entitled to

8   receive a royalty for his inventions.  He also agreed to provide the Regents – not a party

9   herein – with a percentage of any recovery from this action.

10         On December 6, 1993, Dr. Swanson met with a group of people at ALZA's Northern

11  California headquarters to present his work on attention-deficit/hyperactivity disorder

12  ("ADHD").  He asserts that he spoke to the ALZA group for two hours about his work on

13  stimulant medication using methylphenidate, and also spoke about the pharmakokinetics

14  and behavioral time course of various drugs used for treatment of ADHD, describing the

15  problems with each drug and their formulations.

16         Dr. Swanson alleges that prior to the December 6, 1993 meeting, he had spent more

17  than 15 years engaged in the study and treatment of ADHD, with emphasis on the

18  treatment of ADHD in children.  He asserts that he had developed procedures for

19  monitoring the cognitive effects of medication using methylphenidate, and that he also

20  participated in pioneering the development of improved methods for measuring  the plasma

21  concentration of methylphenidate and its metabolite, in order to relate plasma

22  concentrations to clinical efficacy.  In addition, he collaborated on work on the biochemical

23  and genetic factors related to ADHD.

24         Prior to the December 6, 1993 meeting, ALZA required Dr. Swanson to sign a

25  consulting agreement.  According to Dr. Swanson, this consulting agreement pertained to

26  the treatment of ADHD in children, which had nothing to do with ALZA's business activities,

27  as ALZA was only a drug delivery company at that time.  Dr. Swanson claims that he was

28  expressly told prior to the December 6, 1993 meeting that no one at ALZA was an expert or

United States District Court

For the Northern District of California

1   had much knowledge about ADHD or the treatment for the disorder, and that he should

2   give a comprehensive overview of his prior 15 years' experience working with treatment of

3   children with ADHD, including his recommendations for treatment.

4          Dr. Swanson asserts that despite knowing that he was a UC employee and was

5   obligated to assign all rights to his inventions to the Regents, ALZA did not advise him to

6   consult with an attorney before signing the consulting agreement or to give the Regents an

7   opportunity to review the agreement before he signed it.

8          Dr. Swanson alleges that following the December 6, 1993 meeting, he had

9   numerous conference calls and meetings discussing work that he and ALZA would be

10  jointly performing, in which ALZA would confirm his recommendations for treatment of

11  children with ADHD.  ALZA named him the principal investigator in the first study and he

12  wrote much of the protocol.  He was also the first person to analyze the data that resulted

13  from that first study.

14         Dr. Swanson wrote up the report and presented it to ALZA on December 6, 1994.

15  According to Dr. Swanson, the data confirmed his recommendations, which made him "very

16  excited" and which also pleased the ALZA scientists.  On January 13, 1995, he presented

17  ALZA with a final report.

18         After January 13, 1995, Dr. Swanson helped develop the protocol for ALZA's second

19  study.  He claims that after January 13, 1995, until at least October 17, 1995, he was

20  instructed by ALZA not to disclose any information about his work with ALZA until ALZA

21  had an opportunity to file patent applications.  ALZA filed provisional patent applications on

22  October 17, 1995, September 30, 1996, and November 12, 1996.

23         The three ALZA patents at issue in this case are entitled "Methods and Devices for

24  Providing Prolonged Drug Therapy," and are directed at "maintaining a desired therapeutic

25  drug effect over a prolonged therapy period."  The '129 patent was issued on August 6,

26  2005, and is a continuation of an application filed on February 19, 1999 (now the '373

27  patent), which was a continuation in part of an application filed on April 30, 1998

28  (abandoned), which was a continuation in part of an application filed on August 19, 1997

1   (abandoned), which was a continuation of an application filed on July 31, 1997.  The '798

2   patent was issued on April 24, 2012, and is a continuation of an application filed on March

3   8, 2001 (now the '129 patent).  The '373 patent was issued July 19, 2005.

4       All three patents show ALZA as the assignee and list as inventors a number of the

5   ALZA employees that Dr. Swanson identifies as having been present at the December 6,

6   1993 meeting.  Dr. Swanson alleges that he is the inventor of certain claims in the

7   provisional applications, in the applications that led to the three patents, and in the three

8   patents themselves.  He asserts that ALZA did not acknowledge his contributions on the

9   patents because it did not want to have to pay a royalty to the Regents for exclusive use of

10  his inventions.

11      Dr. Swanson claims the he did not discover that ALZA had obtained patents for what

12  he believes to be his inventions until April 2011, when he was deposed in connection with

13  the litigation of ALZA v. Kremers Urban, LLC, Case No. 10-23-LPS (D. Del.) ("the Kremers

14  litigation"), at which time he asserts he first became aware of the claims in the '129 patent.

15      Dr. Swanson filed the original complaint in this action on August 30, 2012, and filed

16  the first amended complaint ("FAC") on November 14, 2012.  In the FAC, Dr. Swanson

17  asserts ten causes of action – (1) correction of inventorship of the '129, '798, and '373

18  patents under 35 U.S.C. § 256; (2) fraud; (3) breach of fiduciary duty; (4) fraudulent

19  concealment; (5) unfair competition under Business and Professions Code § 17200;

20  (6) unjust enrichment; (7) declaratory judgment of invalidity of the '129 patent, the '798

21  patent, and the '373 patent under 35 U.S.C. § 102(f); (8) declaratory judgment of

22  unenforceability of the three patents for inequitable conduct; (9) declaration of ownership of

23  the three patents; and (10) constructive trust.

24      ALZA now seeks an order dismissing the FAC for lack of subject matter jurisdiction,

25  pursuant to Federal Rule of Civil Procedure 12(b)(1), based on lack of standing to pursue

26  the federal patent claims; and/or an order dismissing the third, fourth, fifth, sixth, ninth, and

27  tenth causes of action for failure to state a claim, pursuant to Federal Rule of Civil

28  Procedure 12(b)(6).

**United States District Court**
For the Northern District of California

1 | **DISCUSSION**

2 | B.       Motion to Dismiss for Lack of Subject Matter Jurisdiction

3 |          1.       Legal standard

4 | Federal courts are courts of limited jurisdiction, possessing only that power

5 | authorized by Article III of the United States Constitution and statutes enacted by Congress

6 | pursuant thereto.  See Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986).

7 | Federal courts have no power to consider claims for which they lack subject-matter

8 | jurisdiction, see Chen-Cheng Wang ex rel. United States v. FMC Corp., 975 F.2d 1412,

9 | 1415 (9th Cir. 1992), and are under a continuing duty to dismiss an action whenever it

10 | appears that the court lacks jurisdiction.  Spencer Enters., Inc. v. United States, 345 F.3d

11 | 683, 687 (9th Cir. 2003).

12 | The Constitution limits the federal judiciary power to designated "cases" and

13 | "controversies."  U.S. Const., Art. III, § 2.  Thus, federal courts can determine only those

14 | matters that arise in the context of a genuine "case" or "controversy" within the meaning of

15 | Article III.  SEC v. Medical Committee for Human Rights, 404 U.S. 403, 407 (1972).  The

16 | burden of establishing that a cause lies within this limited jurisdiction rests upon the party

17 | asserting jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377

18 | (1994); see also Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir.

19 | 2001).

20 | Standing is a critically important jurisdictional limitation.  It is "an essential and

21 | unchanging part of the case-or-controversy requirement of Article III.  Lujan v. Defenders of

22 | Wildlife, 504 U.S. 555, 560 (1992).  Standing is not subject to waiver, and must be

23 | considered by the court even if the parties fail to raise it.  See United States v. Hays, 515

24 | U.S. 737, 742 (1995).  The burden is on the party who seeks the exercise of jurisdiction in

25 | his or her favor to "clearly . . . allege facts demonstrating that he is a proper party to invoke

26 | judicial resolution of the dispute."  Id. at 743.

27 | To establish a "case or controversy" within the meaning of Article III, a plaintiff must,

28 | at an "irreducible minimum," show an "injury in fact" which is concrete and not conjectural,

1  a causal causation between the injury and defendant's conduct or omissions, and a

2  likelihood that the injury will be redressed by a favorable decision. Lujan, 504 U.S. at 560-

3  61; see also Allen v. Wright, 468 U.S. 737, 751 (1984).

4          2.     ALZA's motion

5          ALZA argues that the FAC should be dismissed in its entirety because Dr. Swanson

6  lacks standing to bring the federal claims presented, and the court therefore has no

7  jurisdiction over those claims, and no supplemental jurisdiction over the state law claims.

8          With regard to the first cause of action for correction of inventorship, ALZA notes

9  that Dr. Swanson alleges in the FAC that he assigned "all rights to his inventions" to his

10 employer, UC; but that he also alleges that he was retained as a consultant by ALZA, and

11 that prior to his first meeting with ALZA in December 1993, he signed a consulting

12 agreement that would purportedly unfairly benefit ALZA with respect to the control of any

13 intellectual property that he provided or would provide to ALZA.

14         ALZA asserts that if, as Dr. Swanson claims, UC owns all rights and interest in the

15 patents-in-suit, then he has no financial interest in the ownership of the patents, and

16 therefore lacks standing to seek correction of inventorship. Alternatively, ALZA argues, if

17 Dr. Swanson's consulting agreement with ALZA required him to assign all inventions that

18 he provided or would provide to ALZA, then ALZA owns them.

19         In order to have standing to correct inventorship under 35 U.S.C. § 256, alleged

20 inventors must have a concrete financial interest in the relevant patents. Larson v. Correct

21 Craft, Inc., 569 F.3d 1319, 1326-27 (Fed. Cir. 2009). Where an inventor assigns all of his

22 interest in an invention to others, he retains "no financial interest in the patents" and

23 therefore no interest sufficient for him to have standing to pursue a § 256 claim. Id. at

24 1327. In such a situation, there can be no Article III case or controversy, and no

25 supplemental jurisdiction over any asserted state law claims. Id. at 1325-26.

26         Nevertheless, even where a plaintiff has assigned all rights in an invention, he may

27 still have standing to bring a correction of inventorship claim if he can show a "concrete

28 financial interest" in the patent despite the assignment – for example, the right to receive

United States District Court
For the Northern District of California

1    royalties obtained by licensing the patent, or a share in stock of any new companies formed

2    around the patents.  See Chou v. University of Chicago, 254 F.3d 1347, 1356-57 (Fed. Cir.

3    2001).

4           Here, ALZA argues, Dr. Swanson alleges that he assigned all rights to UC, and

5    asserts only that he is "entitled to receive a royalty for his inventions."  ALZA claims that

6    this reference is too vague to show a "concrete financial interest" sufficient to confer

7    standing.  Moreover, ALZA notes, Dr. Swanson alleges elsewhere in the FAC that he (not

8    UC) owns the rights to the patents-in-suit, and that he has agreed to provide UC with a

9    percentage of any recovery from this action.  ALZA contends that if UC owes Dr. Swanson

10   a royalty for his inventions, then it makes no sense that he would be paying UC a portion of

11   his recovery.

12          As for the consulting agreement between ALZA and Dr. Swanson, ALZA notes that

13   the agreement – which Dr. Swanson signed before the first meeting in December 1993 –

14   provides that "[a]ll inventions, know-how, data and information received, generated, or

15   made, as the case may be, by [Dr. Swanson as consultant] which arise out of or relate to

16   the consultancy shall be the property of ALZA."   Thus, ALZA asserts, it is clear that

17   whatever inventions Dr. Swanson believes he brought to ALZA starting in December 1993

18   are ALZA's property if they "relate to" the consultancy – which Dr. Swanson claims focused

19   on "the treatment of ADHD in children."

20          ALZA disputes that Dr. Swanson invented anything, but argues that based on its

21   interpretation of Dr. Swanson's allegations that any ownership interest he may have held

22   was assigned to either UC or ALZA, he cannot possibly have any financial interest in the

23   patents and his claims must be dismissed.

24          With regard to the seventh and eighth causes of action seeking a declaratory

25   judgment of invalidity and unenforceability of the patents-in-suit, ALZA contends that Dr.

26   Swanson also lacks standing to bring these claims.  In order to establish that the court has

27   declaratory judgment jurisdiction to invalidate the patents or to declare them unenforceable,

28   a plaintiff's complaint must show that there is a "substantial controversy, between parties

7

<div style="float:left; writing-mode:vertical">**United States District Court**
For the Northern District of California</div>

1  having adverse legal interests, of sufficient immediacy and reality to warrant the issuance

2  of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127

3  (2007).

4  　　　　ALZA argues that the FAC fails to allege that there is any controversy between the

5  parties regarding the validity or enforceability of the patents – as Dr. Swanson does not

6  allege that he is engaged in any allegedly infringing behavior, or that ALZA has taken any

7  action to enforce the patents against him. ALZA contends that without allegations

8  establishing that there is a dispute between the parties which will be resolved by a

9  determination of patent validity or enforceability, Dr. Swanson lacks standing to challenge

10  the validity or enforceability.

11  　　　　Finally, ALZA argues that without Article III case-or-controversy jurisdiction over any

12  federal claim, the court cannot exercise supplemental jurisdiction over the state law claims.

13  See Larson, 569 F.3d at 1325-26. Thus, dismissal of the claims based on patent law would

14  require dismissal of the California and state common law claims as well.

15  　　　　The court finds that the motion must be DENIED. With regard to the correction of

16  inventorship claim, there are numerous factual disputes regarding the UC employment/

17  patent agreement and the ALZA consulting agreement. At a minimum, it is too early in the

18  case for ALZA to be seeking an interpretation from the court of the provisions of those

19  agreements, or a determination regarding which of the agreements (if any) governs the

20  invention claimed by Dr. Swanson.

21  　　　　In addition, the argument that Dr. Swanson has no financial interest, and therefore

22  no standing, also raises factual issues because, for example, the UC employment

23  agreement plainly contemplated that Dr. Swanson would receive royalties from any

24  invention of his that was patented by UC; and because it is not clear whether the ALZA

25  patents emerged from information or work done pursuant to the consulting agreement with

26  Dr. Swanson, or whether Dr. Swanson had independently completed work while employed

27  at UC (and before he signed the consulting agreement with ALZA) and then presented it to

28  ALZA as background information.

8

United States District Court

For the Northern District of California

1    With regard to whether Dr. Swanson has standing to seek a declaratory judgment of

2  unenforceability and invalidity, it is true that he does not argue that he plans to use the

3  patents, or that ALZA has taken steps to enforce the patents against him.  Thus, while

4  there is certainly a dispute between Dr. Swanson and ALZA regarding Dr. Swanson's claim

5  that he is an inventor of ALZA's patents, it is possible that there may not be a controversy

6  between the two regarding validity or enforceability.  However, as with the question of

7  standing to assert the inventorship claim, the court finds that in the absence of a developed

8  record, it is not possible to determine whether Dr. Swanson in fact has standing to seek a

9  declaratory judgment of unenforceability and invalidity.

10    With regard to invalidity, Dr. Swanson seeks a declaratory judgment that the patents

11  are invalid under § 102(f) because ALZA derived the invention from him and failed to name

12  the true inventor.  Under § 102(f), a person is not entitled to a patent if he "did not himself

13  invent the subject matter sought to be patented."  35 U.S.C. § 102(f).  With regard to

14  unenforceability, Dr. Swanson seeks a declaratory judgment that the patents-in-suit are

15  unenforceable because of inequitable conduct in patent procurement, based on alleged

16  false representations to the PTO regarding the inventorship of the patents.  Given the

17  nature of the dispute between Dr. Swanson and ALZA concerning inventorship, and the

18  attending factual disputes, the court finds that Dr. Swanson has made out a prima facie

19  demonstration of a case or controversy sufficient to allow the case to proceed.

20    In connection with his opposition to ALZA's motion, Dr. Swanson also filed a motion

21  for jurisdictional discovery and an evidentiary hearing, arguing that as the non-moving

22  party, he is entitled to both because ALZA converted its Rule 12(b)(1) motion into a "factual

23  motion" by furnishing "evidence."  The court will consider the extent of discovery and other

24  issues related to the management of the case at the initial case management conference,

25  the date of which will be set by separate notice from the court.

26  C.    Motion to Dismiss for Failure to State a Claim

27      1.    Legal standard

28    A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

United States District Court

For the Northern District of California

1   sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191,

2   1199-1200 (9th Cir. 2003).  Review is limited to the contents of the complaint. Allarcom

3   Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995).  To survive

4   a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the

5   minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires

6   that a complaint include a "short and plain statement of the claim showing that the pleader

7   is entitled to relief." Fed. R. Civ. P. 8(a)(2).

8        A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

9   plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

10  a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

11  1990).  The court is to "accept all factual allegations in the complaint as true and construe

12  the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group,

13  Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007).

14       However, legally conclusory statements, not supported by actual factual allegations,

15  need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  The allegations in

16  the complaint "must be enough to raise a right to relief above the speculative level." Bell

17  Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted).  A

18  claim has facial plausibility when the plaintiff pleads factual content that allows the court to

19  draw the reasonable inference that the defendant is liable for the misconduct alleged."

20  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the

21  court to infer more than the mere possibility of misconduct, the complaint has alleged – but

22  it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679.  In the event

23  dismissal is warranted, it is generally without prejudice, unless it is clear the complaint

24  cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir.

25  2005).

26       In addition, while the court generally may not consider material outside the pleadings

27  when resolving a motion to dismiss for failure to state a claim, the court may consider

28  matters that are properly the subject of judicial notice. Lee v. City of Los Angeles, 250 F.3d

United States District Court

For the Northern District of California

1  668, 688-89 (9th Cir. 2001); Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279,

2  1282 (9th Cir. 1986).  The court may also consider exhibits attached to the complaint, see

3  Hal Roach Studios, Inc. V. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir.

4  1989), as well as documents referenced extensively in the complaint and documents that

5  form the basis of a the plaintiff's claims.  See No. 84 Employer–Teamster Joint Counsel

6  Pension Trust Fund v. America West Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

7          Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

8  shall be stated with particularity."  Fed. R. Civ. P. 9(b).  Under Rule 9(b), falsity must be

9  pled with specificity, including an account of the "time, place, and specific content of the

10  false representations as well as the identities of the parties to the misrepresentations."

11  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted).

12          "[A]llegations of fraud must be specific enough to give defendants notice of the

13  particular misconduct which is alleged to constitute the fraud charged so that they can

14  defend against the charge and not just deny that they have done anything wrong."  Bly-

15  Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotations omitted).

16  In addition, the plaintiff must do more than simply allege the neutral facts necessary to

17  identify the transaction; he must also explain why the disputed statement was untrue or

18  misleading at the time it was made.  Yourish v. California Amplifier, 191 F.3d 983, 992-93

19  (9th Cir. 1999).

20          2.      ALZA's motion

21          ALZA argues that the third (breach of fiduciary duty), fourth (fraudulent

22  concealment), fifth (§ 17200), sixth (unjust enrichment), ninth (declaration of ownership),

23  and tenth (constructive trust) causes of action should be dismissed for failure to state a

24  claim, pursuant to Rule 12(b)(6).

25          Dr. Swanson opposes the motion as to these causes of action with the exception of

26  the sixth cause of action for unjust enrichment, which he conceded in his opposition fails to

27  state a claim (although his counsel backed away from that position at the hearing).  He also

28  notes that ALZA has not sought dismissal of the second cause of action for fraud, and

United States District Court
For the Northern District of California

1 | argues that that claim remains in the case in any event.

2 |         a.      breach of fiduciary duty

3 |      In the third cause of action for breach of fiduciary duty, Dr. Swanson alleges that

4 | ALZA, and the law firms of Sidley and Ashby & Geddes (not parties herein), assumed a

5 | fiduciary duty towards him based on, among other things, Sidley's and Ashby's

6 | representation of him in the Kremers litigation.  Allegedly, at ALZA's behest, Sidley and

7 | Ashby represented Dr. Swanson at his deposition taken in that case, and filed objections

8 | on his behalf and delayed the deposition as long as possible.

9 |      Dr. Swanson asserts that ALZA, and Sidley and Ashby, "had to be aware of" his

10 | contributions to ALZA's patents, and thus had a duty to investigate whether he was the

11 | inventor of the '129 patent.  Dr. Swanson contends that ALZA, and Sidley and Ashby,

12 | breached this duty, as they failed to consult Dr. Swanson about this issue.  He alleges

13 | further that ALZA, and Sidley and Austin, had a fiduciary duty to advise him about his

14 | inventorship rights, to advise him about a potential conflict with ALZA, and to advise him to

15 | seek his own counsel, but that they failed to comply with these obligations, thereby

16 | breaching the fiduciary duty they owed to him.

17 |      ALZA argues that the breach of fiduciary duty claim must be dismissed because Dr.

18 | Swanson fails to plead facts sufficient to support the elements of the claim.  To state a

19 | claim for breach of fiduciary duty, a plaintiff must allege facts that, if true, show the

20 | existence of a fiduciary relationship, a breach of the fiduciary duty, and damage proximately

21 | caused by that breach.  See Roberts v. Lomanto, 112 Cal. App. 4th 1553, 1562 (2003).

22 | ALZA argues that Dr. Swanson fails to plead facts making it plausible to conclude that it

23 | owed him any duty, or that it breached any duty owed to him.

24 |      "Before a person can be charged with a fiduciary obligation, he must either

25 | knowingly undertake to act on behalf and for the benefit of another, or must enter into a

26 | relationship that imposes that undertaking as a matter of law." City of Hope Nat'l Med. Ctr.

27 | v. Genentech, Inc., 43 Cal. 4th 375, 386 (2008) (citation and quotation omitted).  Thus, in

28 | certain relationships, California law imposes a fiduciary duty. GAB Business Servs., Inc. v.

United States District Court

For the Northern District of California

1  Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 416 (2000), overruled on other

2  grounds by Reeves v. Hanlon, 33 Cal. 4th 1140 (2004).

3         However, ALZA asserts, a contractual consulting relationship, such as the one

4  between Dr. Swanson and ALZA, does not automatically impose a fiduciary duty on any

5  parties to the contract.  Nor, ALZA asserts, is it aware of any authority holding that when a

6  company offers to provide counsel to represent a consultant for the limited purpose of

7  responding to discovery or preparing for a deposition, as Dr. Swanson claims ALZA did in

8  connection with the Kremers litigation, a fiduciary duty is automatically imposed on the

9  company.

10        In addition,  ALZA argues, the FAC does not allege any basis to imply a fiduciary

11  duty.  An implied duty may arise when confidence is imposed by persons in the integrity of

12  others, if the latter voluntarily accepts or assumes the confidence.  Pierce v. Lyman, 1 Cal.

13  App. 4th 1093, 1101-02 (1991).  Here, ALZA contends, the FAC does not allege facts

14  sufficient to raise an inference that an informal fiduciary relationship existed between Dr.

15  Swanson and ALZA.

16        In particular, ALZA takes issue with Dr. Swanson's suggestion that because ALZA

17  offered to provide Dr. Swanson with representation to respond to discovery in a case

18  involving one of ALZA's products, ALZA thereby took on duties that an attorney might owe

19  to a client, including a fiduciary duty toward Dr. Swanson to advise him about his

20  inventorship rights or about a potential conflict with ALZA, or to advise him to seek his own

21  counsel.  ALZA argues that Dr. Swanson does not (and cannot) allege that ALZA is an

22  attorney, and that in any event, he fails to allege facts showing any informal fiduciary duty

23  from ALZA to himself.

24        ALZA asserts further that the allegations of breach of fiduciary duty are also

25  insufficient because they are implausible.  In particular, with regard to Dr. Swanson's

26  contention that ALZA breached its fiduciary duty to him by willfully concealing the omission

27  of his inventorship from the '129 patent from him, ALZA argues that a party cannot willfully

28  conceal public facts such as those contained in an issued patent.  The '129 patent issued in

13

United States District Court

For the Northern District of California

1   2005, which was more that five years before the date that Dr. Swanson claims he first

2   became aware that the patent existed and that he was not named as an inventor.  ALZA

3   contends that it could not breach a duty by willfully concealing information in 2011 that was

4   published to the world in 2005.

5        The motion is GRANTED in part and DENIED in part.  While the court agrees that

6   the claim is without merit to the extent it alleges what appears to be a fictional relationship

7   between Dr. Swanson and ALZA, such that ALZA can be found to have owed a fiduciary

8   duty to Dr. Swanson to advise him of his inventorship rights, and to have breached that

9   duty as alleged in the FAC, the court also finds that the claim cannot be dismissed to the

10  extent that it alleges that ALZA and its attorneys owed Dr. Swanson a fiduciary duty in

11  connection with the representation in the Kremers case, because the facts regarding the

12  nature of the representation are not clear and may well be disputed.

13              b.      fraudulent concealment

14       In the fourth cause of action for fraudulent concealment, Dr. Swanson alleges that

15  ALZA filed multiple patent applications claiming his inventions while actively concealing that

16  he was at least a co-inventor on those multiple applications.  He asserts that ALZA had an

17  affirmative duty to disclose the true inventor to the PTO.  He also alleges that ALZA,

18  through its attorneys, represented him while being aware of his contributions to the patents

19  at issue in the Kremers litigation, and actively concealed this information from him.

20       ALZA asserts that the fraudulent concealment claim must be dismissed for failure to

21  state a claim because it fails to sufficiently allege a duty by ALZA to disclose information

22  about prosecution of the patents-in-suit to him, and rests on what ALZA claims is the false

23  premise that a person can deceive by withholding public information – specifically,

24  information regarding who is named on a patent as the inventor.

25       To state a claim for fraudulent concealment under California law, a plaintiff must

26  allege five elements:  (1) the defendant concealed or suppressed a material fact, (2) the

27  defendant was under a duty to disclose that fact to the plaintiff, (3) the defendant concealed

28  or suppressed the fact with intent to defraud, (4) the plaintiff was unaware of the fact and

14

United States District Court
For the Northern District of California

1  would not have acted as he did if he had known of the concealed or suppressed fact, and

2  (5) the plaintiff suffered damage as a result of the concealment or suppression of the fact.

3  <u>Kaldenbach v. Mutual of Omaha Life Ins. Co.</u>, 178 Cal. App. 4th 830, 850 (2009).

4  Here, ALZA argues, Dr. Swanson has not pled facts showing the second element – that

5  ALZA had a duty to disclose information to him.  There are four circumstances in which

6  nondisclosure or concealment may constitute actionable fraud – (1) when the defendant is

7  in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge

8  of material facts unknown to the plaintiff; (3) when the defendant actively conceals a

9  material fact from the plaintiff; or (4) when the defendant makes a partial representation to

10  the plaintiff while suppressing other material facts.  <u>LiMandri v. Judkins</u>, 52 Cal. App. 4th

11  326, 336 (1997).  In addition, because a claim of fraudulent concealment sounds in fraud,

12  the pleading must comport with Rule 9(b).

13       ALZA asserts that for the reasons stated with regard to the third cause of action for

14  breach of fiduciary duty, Dr. Swanson has not pled facts showing the existence of a

15  fiduciary relationship; and that each of the other three circumstances listed above in which

16  nondisclosure may be actionable presupposes the existence of some other relationship

17  between the parties – such as "the relationship between seller and buyer, employer and

18  prospective employee, doctor and patient, or parties entering into any kind of contractual

19  agreement" – that gives rise to a duty to disclose.  <u>See</u> <u>id.</u> at 336-37 (citing Cal. Civ. Code

20  § 1572(3)).

21       Thus, in ALZA's view, it is impossible for Dr. Swanson to establish that ALZA

22  concealed anything from him, or misled him about anything, material or not.  ALZA asserts

23  that the information regarding who was or was not listed on the patents as the inventor has

24  been freely available to Dr. Swanson and the public, starting, at the latest, in 2005, when

25  the '129 and '373 patents issued, and the 2005 application leading to the '798 patent was

26  published.

27       The court finds that the motion must be GRANTED.  As indicated above, a

28  fraudulent concealment claim requires facts showing a duty to disclose.  Dr. Swanson has

United States District Court

For the Northern District of California

1   not alleged any facts showing that ALZA had a duty to inform him that he was not named

2   as an inventor on the patents, after 2005 when that fact became public knowledge.  To the

3   extent that Dr. Swanson alleges that ALZA had a duty to inform him of that fact prior to

4   2005, any claim for fraudulent concealment is time-barred.  See Cal. Code Civ. P. § 338(d)

5   (three-year limitations period for claims seeking "relief on the ground of fraud or mistake").

6                       c.        unfair competition under § 17200

7        In the fifth cause of action for unfair competition under Business and Professions

8   Code § 17200, Dr. Swanson alleges that ALZA has harmed consumers by its "intentional

9   and fraudulent business practice" of not naming him as a co-inventor of the applications

10   that resulted in the issuance of the patents at issue in this suit, and actively concealing that

11   omission; and by its "intentional and fraudulent practice" of requiring him to sign a

12   consulting agreement and not advising him to consult with an attorney or to notify the

13   Regents prior to signing the consulting agreement.

14        ALZA argues that the § 17200 claim must be dismissed because Dr. Swanson failed

15   to allege facts showing that he has standing to bring this claim.  In order to establish

16   standing to bring a UCL claim, a plaintiff must allege facts showing that he has "suffered

17   injury in fact and has lost money or property as a result of the unfair competition."  See Cal.

18   Bus. & Prof. Code § 17204.  That is, the plaintiff must allege that he has lost "money or

19   property" sufficient to constitute an "injury in fact" under Article III of the Constitution.  Rubio

20   v. Capital One Bank, 613 F.3d 1195, 1203-04 (9th Cir. 2010).

21        Here, ALZA asserts, Dr. Swanson makes no allegation that he lost any money or

22   property as a result of the actions of which he complains.  Although the FAC alleges that

23   California consumers and the University of California have been harmed by the complained

24   of activity, ALZA contends that it fails to allege that Dr. Swanson, personally, was harmed

25   by ALZA's acts.

26        ALZA concedes that Dr. Swanson did allege financial harm to himself elsewhere in

27   the FAC, but argues that the § 17200 claim should be dismissed regardless, because he

28   does not allege in the cause of action itself that he was financially harmed.  ALZA also

1  asserts that even if the court accepts Dr. Swanson's pleading by incorporation, he still fails

2  to allege why either he or UC would have been injured based on the alleged unfair

3  competition.

4       The court finds that the motion must be DENIED.  Dr. Swanson alleges throughout

5  the FAC that he himself was harmed financially.  At this stage of the litigation, it is not

6  possible to determine whether Dr. Swanson lost money or property as a result of any action

7  by ALZA until a factual record has been developed and the rights of the parties under the

8  UC employment/patent agreement and the ALZA consulting agreement have been sorted

9  out (as discussed above with regard to the motion to dismiss for lack of subject matter

10  jurisdiction).

11                    d.        unjust enrichment

12       In the sixth cause of action for unjust enrichment, Dr. Swanson alleges that because

13  he was not named as an inventor on the patents-in-suit, he and UC were denied the "rights

14  and privileges of ownership" of those patents, and ALZA has been unjustly enriched

15  thereby.

16       ALZA argues that the unjust enrichment cause of action must be dismissed for

17  failure to state a claim, in part because it is duplicative of the inventorship, fraud, and

18  fiduciary duty claims, but more importantly, because the growing weight of authority holds

19  that unjust enrichment is not a cause of action.

20       In his opposition, Dr. Swanson appeared to concede that under the weight of

21  authority, there is no cause of action for unjust enrichment in California.  At the hearing,

22  however, counsel argued that Dr. Swanson was not making such a concession.

23       The court finds that the motion must be GRANTED.  While there is a split within

24  California courts regarding whether unjust enrichment is an independent cause of action,

25  most recent decisions by the California Court of Appeal have explicitly held that there is no

26  such cause of action in California.  See Levine v. Blue Shield of California, 189 Cal. App.

27  4th 1117, 1138 (2010); Jogani v. Superior Court, 165 Cal. App. 4th 901, 911 (2008); McKell

28  v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1490 (2006); McBride v. Boughton, 123

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1  Cal. App. 4th 379, 387 (2004).  In general, California courts have concluded that unjust

2  enrichment is "not a cause of action . . . or even a remedy, but rather a principle, underlying

3  various legal doctrines and remedies.  It is synonymous with restitution." McBride, 123 Cal.

4  App. 4th at 387; see also Melchior v. New Line Prods., Inc., 106 Cal. App. 4th 779, 793

5  (2003).

6                     e.      declaration of ownership

7        In the ninth cause of action seeking a declaration of ownership of the '129, '798, and

8  '373 patents, Dr. Swanson alleges that an actual controversy exists between himself and

9  ALZA regarding the inventorship of the three patents.

10        ALZA argues that this cause of action must be dismissed for failure to state a claim

11  because any claim that is dependent on a determination of patent inventorship, such as a

12  misappropriation of patent rights, is preempted by federal patent law.  See University of

13  Colo. Found., Inc. v. American Cyanamid Co., 196 F.3d 1366, 1372 (Fed. Cir. 1999) ("the

14  field of federal patent law preempts any state law that purports to define rights based on

15  inventorship").

16        In opposition, Dr. Swanson argues that he is legally entitled to a declaration of

17  ownership.  He agrees with the Federal Circuit in Cyanamid that "the Patent Act leaves no

18  room for states to supplement the national standard for inventorship," id., but asserts that

19  this case and the ninth cause of action are not directed at that issue.

20        Dr. Swanson points to FAC ¶ 268, which alleges that he is entitled to a declaration

21  that as between himself and ALZA, he is at least a legal and equitable co-owner of the

22  three patents-in-suit, and to an order that ALZA must execute any necessary documents to

23  formally confirm his ownership of the three patents.  He contends that there is a genuine

24  dispute between the parties over ownership of these patents as a result of the terms of the

25  consulting agreement executed on December 1, 1993, and the Patent Agreement he

26  executed with the Regents in 1980, which he claims raises state law statutory and contract

27  questions.

28        Dr. Swanson argues that under Board of Trustees of Leland Stanford Junior Univ. v.

United States District Court

For the Northern District of California

1    Roche Molecular Sys., Inc., 583 F.3d 832 (Fed. Cir. 2009), "the question of who owns the

2    patent rights and on what terms typically is a question exclusively for state courts" –

3    although this rule has exceptions. See id. at 841. Here, he asserts, the interplay between

4    the 1993 consulting agreement and the UC patent policy involves more than simply

5    whether there was an assignment and will ultimately require the court and the factfinder to

6    resolve issues of inventorship under federal patent law, as well as issues involving state

7    statutory and contract law.

8         The court finds that the motion must be DENIED. It may well be that this claim is

9    preempted by federal law, but in the absence of a fully developed record, it is not possible

10   for the court presently to make that determination.

11                  f.      constructive trust

12        In the tenth cause of action, Dr. Swanson seeks imposition of a constructive trust as

13   a remedy for ALZA's alleged fraudulent conduct. ALZA asserts that under California law, a

14   constructive trust is an equitable remedy that compels the transfer of wrongfully held

15   property to its rightful owner, not a standalone cause of action. Moreover, ALZA argues, to

16   the extent that the constructive trust theory rests on Dr. Swanson's status as an inventor, it

17   is preempted by federal patent law.

18        The motion is GRANTED. Under California law, a constructive trust is an equitable

19   remedy, not a cause of action. See Mattel, Inc. v. MGA Entm't, Inc., 616 F.3d 904, 908-09

20   (9th Cir. 2010); Haskell Eng'ing & Supply Co. v. Hartford Acc. & Indem. Co., 78 Cal. App.

21   3d 371, 375 (1978); see also Kim v. Westmoore Partners, Inc., 201 Cal. App. 4th 267, 277,

22   n.4 (2011).

23                           **CONCLUSION**

24        In accordance with the foregoing, the motion to dismiss the FAC for lack of subject

25   matter jurisdiction is DENIED. The motion to dismiss the third cause of action for breach of

26   fiduciary duty is GRANTED in part and DENIED in part. The motion to dismiss the fifth

27   cause of action under § 17200, and the ninth cause of action for declaration of ownership

28   for failure to state a claim is DENIED. The motion to dismiss the fourth cause of action for

United States District Court

For the Northern District of California

1  fraudulent concealment,  the sixth cause of action for unjust enrichment, and the tenth

2  cause of action for constructive trust for failure to state a claim is GRANTED.

3

4  **IT IS SO ORDERED.**

5  Dated:  March 12, 2013

6                                                                  _____
                                                                       PHYLLIS J. HAMILTON
7                                                                      United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28