Kurt G. Calia (CA Bar No. 214300)
Email: kcalia@cov.com
COVINGTON & BURLING LLP
333 Twin Dolphin Dr.
Redwood Shores, CA 94065
Telephone:   (650) 632-4700
Facsimile:   (650) 632-4800

George F. Pappas (admitted *Pro Hac Vice*)
Email: gpappas@cov.com
Allison E. Kerndt (admitted *Pro Hac Vice*)
Email: akerndt@cov.com
COVINGTON & BURLING LLP
1201 Pennsylvania Ave, NW
Washington, DC 20004
Telephone:   (202) 662-6000
Facsimile:   (202) 662-6291

*Attorneys for Defendant ALZA CORPORATION*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| DR. JAMES M. SWANSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ALZA CORPORATION, a corporation,<br><br>Defendant. | Case No.: 4:12-cv-04579-PJH-KAW<br><br>**ATTESTATION OF MEET AND CONFER** |

The parties met and conferred in person on July 26, 2013.

Respectfully submitted,

| | |
|---|---|
| /s/ *Kurt G. Calia* | /s/ *Gerald P. Dodson* |
| Kurt G. Calia | Gerald P. Dodson |
| COVINGTON & BURLING LLP | CARR & FERRELL LLP |
| *Attorney for Defendant* | *Attorney for Plaintiff* |

August 15, 2013

Magistrate Judge Kandis A. Westmore
United States District Court
Oakland Courthouse, Courtroom 4 - 3rd Floor
1301 Clay Street, Oakland, CA 94612

      Re:  <u>Swanson v. ALZA Corp., Case No. 4:12-cv-04579-PJH</u>

Dear Magistrate Judge Westmore:

      The parties in the above-captioned action, having met and conferred on July 26, 2013, and being unable to resolve their disputes, present for resolution a dispute related to Plaintiff's production of electronically-stored information (ESI) and the current case schedule.

**<u>ALZA'S Position:</u>**

      <u>Relevant Background.</u>  Plaintiff, a former consultant to ALZA, claims he was wrongly omitted as an inventor of three ALZA patents which cover the ADHD drug, Concerta®, based on his work with ALZA in the early 1990s.  Although the work he alleges supports his inventorship claims occurred at least twenty years ago, Plaintiff pleads that he became aware of his claims in April, 2011—over two years ago.  *See* Dkt. No. 31 at ¶¶ 33, 155, 198.

      Plaintiff's lawsuit, filed a year ago, came as a surprise to ALZA both because Plaintiff made no inventive contribution whatsoever to the ALZA patents, but also because as part of his consulting arrangement with ALZA in 1993, Plaintiff expressly agreed to assign to ALZA all rights in any invention "which ar[o]se out of or relate[s] to this consultancy."  This is of critical importance because in order to have standing to correct inventorship, Plaintiff must have a concrete financial interest in a patent.  *See Chou v Univ. of Chi.*, 254 F.3d 1347, 1356-57 (Fed. Cir. 2001) (holding that without an ownership interest, an inventor must show a personal and "concrete financial interest" in a patent to establish standing).  If an inventor assigns all interest in an invention to the patent owner, he has no standing to pursue a correction of inventorship claim.  *Id.*  For this reason, in view of the 1993 assignment to ALZA of any rights he may have had, ALZA moved to dismiss Plaintiff's complaint in its entirety.  Dkt. No. 37.  Judge Hamilton denied the motion, noting that this question related to the parties' contractual relationship would be more appropriately addressed on summary judgment.  Departing from her standard one-motion-per-side rule, Judge Hamilton invited ALZA to move for early summary judgment on this ground.  Dkt. No. 55.  The scheduling order issued by Judge Hamilton included express reference to such an early summary judgment motion.[1]  Dkt.

---

[1] The Scheduling Order also includes various deadlines for claim construction, the first of which is on August 28, 2013.  Dkt. No. 68.

1

No. 68. The same day this order was entered, ALZA served its initial discovery and since that time has diligently pursued Plaintiff's compliance with its discovery obligations.[2]

This background is important because it demonstrates the prejudice to ALZA—both in exercising its right to pursue an early summary judgment motion and in securing important discovery before claim construction begins—caused by Plaintiff's dilatory conduct and the extraordinary delay in production of what Plaintiff himself characterizes as the most important evidence in this case.

ALZA's Efforts to Secure Discovery Compliance, Without Success. Since early July, ALZA has conferred with Plaintiff about the completeness and timing of his document production, including electronically-stored information (ESI), which Plaintiff's counsel described as the "most critical" information in this case. During a meet-and-confer call on July 8, 2013, counsel for Plaintiff admitted that they had only recently determined that Plaintiff had an unknown amount of ESI; that counsel had not yet identified a way to access this information; and that counsel could not commit to a deadline for producing the information. This is particularly troubling given that the discovery requests were served on April 19, 2013, and this suit has been pending for a full year. Dkt. No. 1.

Since the July 8, 2013 call, Plaintiff has presented a moving target regarding his document production, most recently representing that he will "substantially complete" production of ESI by August 9.[3] However, Plaintiff is using inadequate search terms to search the ESI, omitting such obvious terms as each of the named inventors, the numbers of ALZA's patents and the applications which led to them, and the name of Plaintiff's alleged corroborators, among others.[4] Worse,

---

[2] Importantly, ALZA's initial discovery requests, served April 19, 2013, focused substantially on the parties' contractual situation and on technical information relevant to, among other things, claim construction. Exs. A and B. Indeed, ALZA's interrogatories focus exclusively on the contract issues. Ex. B.

[3] This representation came only after ALZA notified Plaintiff that it would be seeking judicial relief, and following weeks of exchanging letters and conferring on Plaintiff's discovery deficiencies during the months of June and July. Notably, Plaintiff did not produce a single file of ESI until after ALZA filed its initial motion to compel on July 17, 2013. Dkt. No. 73.

[4] Plaintiff has argued that using "patent" as a search term would capture all communications relating to ALZA's patents. Aside from the fact that Plaintiff cannot know the accuracy of that statement without actually running two sets of search terms and comparing the results, it is common to refer to patents by their number (or application number) without using the word "patent." It is thus commonplace to use these numbers as search terms, and their addition can hardly be decried as onerous. Likewise, Plaintiff objects to using the names of the listed inventors, claiming that his use of the search term "methylphenidate" (the chemical name of the drug) will capture all documents relating to his work with ALZA. Putting aside the obviousness of using the inventor names as search terms in a case for correction of inventorship, ALZA knows from review of its own documents that the drug name was often not used in communications about the project.

although Plaintiff invited ALZA to provide additional search terms if ALZA felt that their initial set of terms was insufficient (which ALZA did on July 17), Plaintiff reversed course and on August 5 stated for the first time that it would not use the search terms ALZA provided.[5]

Plaintiff's correspondence reveals two additional serious deficiencies. First, Plaintiff had indicated that he cannot update his admittedly deficient interrogatory responses (which do no more than parrot the First Amended Complaint) until after Plaintiff has an opportunity to review and produce his ESI. In other words, Plaintiff's interrogatory responses remain incomplete because *Plaintiff has not reviewed his own ESI documents*.[6] Second, ALZA is still left guessing when Plaintiff's document production will be complete and whether its new refusal to employ ALZA's search terms will leave omissions in the production of the "most critical" documents in the case.

Prejudice to ALZA and Relief Sought. Plaintiff's delay in producing the "most critical" documents in his possession has materially prejudiced ALZA. His failure to use a complete set of ESI search terms, produce his ESI within four months of ALZA's requests, and supplement his admittedly-deficient interrogatory responses has frustrated ALZA's ability to complete the needed discovery (including Plaintiff's deposition) in order to seek early summary judgment relief on the standing issue, as contemplated and authorized by Judge Hamilton Order. Dkt. No. 68.

Plaintiff's delay translates into substantial defense costs that could have been avoided entirely if, as ALZA expects to demonstrate, this Court has no jurisdiction and the case must be dismissed. Moreover, ALZA has made clear its intention to promote judicial economy and reduce the cost in defending this lawsuit by seeking early summary adjudication on jurisdictional grounds *before* being forced to invest substantial costs of defense related to claim construction and the merits of Plaintiff's ill-founded inventorship claims. However, Plaintiff's failure to timely produce ESI based on a comprehensive set of search terms and respond to ALZA's discovery requests has thwarted ALZA's efforts.

Plaintiff's discovery delays have further deprived ALZA of the opportunity to review a complete production of ESI in advance of the approaching claim construction deadlines. ALZA

---

[5] ALZA had believed that this issue had been successfully resolved during the parties' July 26, 2013 meet-and-confer in which they spent 20 minutes reviewing in detail how Plaintiff would implement ALZA's search terms. On August 5—nearly three weeks after ALZA had provided a comprehensive set of revised search terms and more than a week after the July 26 meeting—Plaintiff sent a letter stating for the first time that they would not agree to apply the expanded terms.

[6] ALZA posed early contention interrogatories seeking basic information about why Plaintiff believes his assignment obligations to ALZA do not defeat his claims. Plaintiff does not deny that his current responses are deficient, nor could he: the responses merely state (with no support) that his assignment obligations to ALZA should simply be ignored, because they were obtained by fraud— without identifying how he was defrauded, who misled him and how, or any other relevant fact relating to his allegation of fraud. Moreover, Plaintiff's stated intention to update this response after his ESI production is complete is cold comfort when he refuses to apply a comprehensive set of search terms that would ensure that highly relevant documents are located and produced.

expects that documents in Plaintiff's possession will likely undercut his claim construction positions, yet ALZA has been denied the opportunity to review and identify them before the August 28, 2013 deadline for exchanging proposed terms for claim construction and the September 18, 2013 deadline for exchanging preliminary constructions and extrinsic evidence.[7] Dkt. No. 68.

ALZA should not be further prejudiced by Plaintiff's inexcusable discovery delays. Accordingly, ALZA seeks an order:

(1) compelling Plaintiff to apply ALZA's proposed search terms to his ESI and produce any non-duplicative, non-privileged documents by no later than September 13, 2013;

(2) compelling Plaintiff to update his responses to Interrogatories Nos. 1 and 2 by September 20, 2013; and

(3) recommending to Judge Hamilton that she suspend the claim construction deadlines until Plaintiff's production of ESI is complete and Plaintiff has served supplemental interrogatory responses, at which time the parties will meet-and-confer regarding a new schedule for claim construction, with a goal of preserving the scheduled claim construction hearing date on January 29, 2014, if possible.

Plaintiff's claim that ALZA has somehow engaged in unfair procedural wrangling regarding the submission of this letter is ill-considered and inaccurate, and appears designed to do nothing more than introduce further delay. While ALZA would prefer to focus on the substance of the parties' dispute, should the Court deem it necessary, ALZA will provide the Court with additional facts concerning the parties' communications that led to this dispute in any hearing on this matter. In addition, ALZA respectfully requests oral argument related to this dispute.

---

[7] Trying to sidestep the prejudice that it has caused ALZA, Plaintiff has argued that any delay in his production of extrinsic evidence from ESI is insignificant, as the intrinsic record of the patent and its file history will be paramount to issues of claim construction. ALZA does not dispute the importance of intrinsic evidence, but contends that extrinsic evidence may be important, as well. Notably, when Plaintiff scoffed at ALZA's concern about delayed extrinsic evidence from ESI during a July 16 telephone conference, Plaintiff quickly retreated when ALZA asked whether Plaintiff would be willing to forego any reliance on it in claim construction. Plaintiff also notes that the current deadlines contemplate some claim construction discovery even after the initial deadlines in August and September. While this is true, it does not justify discovery nonfeasance; ALZA is entitled to formulate its claim construction position based on the fulsome discovery record it sought nearly four months ago—a record that likely would have been developed had Plaintiff even *begun* to evaluate his ESI before July (more than three months after it was requested and eleven months after Plaintiff filed suit).

**Dr. Swanson's Position[8]**

ALZA's position contains several misrepresentations and lacks candor, and for these reasons alone the Court should deny its requests for relief. ALZA never accepted and has failed to abide by Judge Hamilton's March 28 order (the "March 28 Order") denying ALZA's request for discovery limited only to jurisdictional issues and which opened discovery in its entirety.[9] ALZA instead has chosen to manufacture a bogus discovery dispute to: (1) induce this Court to recommend that Judge Hamilton overturn her March 28 Order; and (2) avoid claim construction proceedings. ALZA's requests for relief are founded on pretext and should be denied.

ALZA has employed gamesmanship tactics to ensure that Dr. Swanson can never comply with ALZA's demands, yet has refused to reciprocate in discovery--violating both the terms of this District's Guidelines for the Discovery of Electronically Stored Information ("ND Cal Guidelines") and the Federal Circuit's Model Order on E-Discovery in Patent Cases ("CAFC Guidelines"). Moreover, on multiple occasions, ALZA attempted to interfere with Dr. Swanson's efforts to produce his electronically stored information ("ESI") to ALZA.

Despite both ALZA's interference with his discovery efforts and ALZA presenting a "moving target" for Dr. Swanson to satisfy ALZA's meritless discovery demands, Dr. Swanson has produced, from June 2013 through August 9, 2013, nearly **750,000 pages of documents** to ALZA. More than 600,000 pages are from ESI sources. This is from one individual custodian and is nearly the same amount of pages as ALZA has produced. ALZA is a multibillion dollar company with at least 11 named inventor custodians, yet its production is largely regurgitated discovery from earlier lawsuits.[10] Despite this, ALZA unabashedly describes Dr. Swanson's efforts as "nonfeasance."

Finally, the only "prejudice" ALZA will suffer is to comply with the March 28 Order. ALZA has demonstrated that it has no interest in obtaining Dr. Swanson's documents that purportedly are needed for ALZA to exchange claim terms. It has offered no guidance as to what Dr. Swanson should focus on producing – only the amorphous phrase "extrinsic evidence that **may** be important." It has made no reference to specific requests for production or specific search terms. The guidelines of e-discovery in this District and at the Federal Circuit soundly rebuke burdensome requests that amount to dilatory fishing expeditions like ALZA's.

**Relevant Factual Background**

---

[8] Plaintiff Dr. Swanson attempted to meet and confer with Defendant ALZA on August 13, 2013 in accordance with Standing Order No. 12(a), but ALZA refused, accusing Dr. Swanson of delay. To expeditiously settle this matter, Dr. Swanson submits his position herein.

[9] Judge Hamilton denied ALZA's proposal for delaying "identification of claim terms for construction . . . until . . . after the Court has made the threshold determination that jurisdiction is proper in this case." (Dkt. Nos. 59 at 13, and 63). ALZA conspicuously neglected to inform this Court of this aspect of the March 28 Order.

[10] A significant number of documents produced bear Bates numbering from previous ALZA cases.

ALZA's Consistent Theme – Delay:  After first learning at a 2011 deposition that he had been excluded from patents obtained by ALZA to which he rightfully should have been named as inventor, Dr. Swanson brought this action on August 30, 2012.  From the start, ALZA delayed the progression of this case and unsurprisingly now seeks further delay.

ALZA's counsel immediately requested a 30 day extension of time to answer.  Dr. Swanson agreed to a 21 day extension.  (Dkt. No. 14).  In November 2012, ALZA requested an additional week's extension to answer Dr. Swanson's first amended complaint.  (Dkt. No. 32).  In December 2012, ALZA again requested another extension of the briefing schedule.  (Dkt. No. 41).  Also in December 2012, ALZA requested a week extension of the date for the case management conference ("CMC").  (Dkt. No. 46).  On February 19, 2013, ALZA again requested moving a motion hearing date so that it would be effectively rescheduled to April.  Finally, Dr. Swanson had had enough, and refused to reschedule.

ALZA's Failed Motion at the CMC Effectively Parrots Its Instant Motion:  In the Joint Case Management Statement, ALZA moved the Court to order "identification of claim terms for construction . . . not [to] occur until . . . after the Court has made the threshold determination that jurisdiction is proper in this case."  (Dkt. No. 59 at 13).

In its request before *this* Court, ALZA asks the Court to order "suspen[sion of] the claim construction deadlines until Plaintiff's production of its ESI is complete and Plaintiff has served supplemental interrogatory responses."  As ALZA has explained, the supplemental interrogatory responses relate to ALZA's jurisdictional issue, not claim construction.[11]

ALZA's Motion for Limited Discovery Was Denied By Judge Hamilton:  At the CMC hearing on March 28, 2013, Judge Hamilton denied limited discovery and ordered the opening of full discovery, including claim construction discovery.  (Dkt. No. 63).

ALZA Embarks On A Campaign For *De Facto* Circumvention of the March 28 Order:  On April 25, Dr. Swanson submitted his Inventorship Contentions to ALZA, including the documents upon which he anticipates relying on regarding his inventorship.  On June 12, 2013, ALZA produced one million pages of uncategorized electronic paper to Dr. Swanson.  On June 27, ALZA sent a letter to Dr. Swanson demanding immediate production of his documents.

On July 8, the parties met and conferred.  Dr. Swanson communicated that, despite the CAFC guidelines of five search terms per custodian, he had generously selected 22 broad terms designed to capture documents responsive to ALZA's requests.[12]  He then invited ALZA to suggest

---

[11] ALZA wishes to prematurely foreclose Dr. Swanson his right to update his interrogatory responses.  The amended complaint which ALZA complains Dr. Swanson's responses rely on was extremely detailed—so much so that it survived ALZA's motion to dismiss.  (Dkt. No. 55).

[12] The 22 search terms employed by Dr. Swanson include:  *ALZA*, *Concerta*, *Methylphenidate*, *MPH*, *Patent*, and *Ritalin*.  These terms are broad enough to locate correspondence between Dr. Swanson and the named inventors, which ALZA should also have.  For example, the named inventors' e-mail addresses contain the word "ALZA."  Additionally, using patent numbers for Dr. Swanson, who was never included by ALZA in the patents-in-suit is (continued…)

a few additional terms upon which the parties could later meet and confer. At ALZA's request, Dr. Swanson sent his terms to ALZA after the meeting. ALZA did not offer to share its terms or its search methodology as anticipated by the ND Cal Guidelines.

On July 17, ALZA filed a motion to compel and motion to expedite, focusing **again** on delaying claim construction proceedings despite Dr. Swanson's offer to substantially produce his ESI by August 9, 2013. The same day, nine days after the meet and confer, ALZA demanded that **89** new terms be searched.[13] On July 22, in his opposition to ALZA's motion to expedite, Dr. Swanson objected to this overly burdensome demand.

Rather than rule on the motion, this Court ordered the parties to meet and confer. The parties did so on July 26. During that meeting, Dr. Swanson offered to run some "test searches" to show how much time it would take to run ALZA's 89 overly burdensome search terms. Dr. Swanson also stated that he believed the searches were unnecessary, in conflict with the CAFC Guidelines, and did not agree to ultimately run the entire set after the test runs were performed.

The Approach of Substantial Production Triggers ALZA to Concoct a Reneged "Agreement": From July 19 through August 9, Dr. Swanson produced over 600,000 ESI pages to ALZA in a rolling fashion as requested by ALZA. While Dr. Swanson was diligently producing these documents, ALZA sent three letters, one with 11 pages of demands, insisting that Dr. Swanson substantively respond during the week of August 5—the week in which he was trying to substantially complete his production. When Dr. Swanson repeated his statement from the meet and confer that he had not agreed to run 89 overly burdensome search terms, ALZA immediately threatened to file this joint letter because Dr. Swanson had allegedly "reneged" on ALZA's unilaterally-made "agreement" that he use all 89 search terms.[14]

**ALZA's "Prejudice" Was Previously Considered and Denied by Judge Hamilton in March**

ALZA's Motion Would Lead to a Recommendation that Judge Hamilton Overturn Her Order: Now that this discovery issue is no longer before Judge Hamilton, ALZA has de-emphasized its pretextual argument of prejudice to its claim construction positions, and instead emphasized the "substantial defense costs that could have been avoided if . . . this Court has no jurisdiction and the case must be dismissed." Judge Hamilton considered this in March, and ordered otherwise.

Judge Hamilton's opening of unlimited fact discovery was **unconditional**. There was no requirement that each party complete document production, or even document production related to claim construction before the exchange of claim terms. Further, ALZA has proffered **no relevant legal authority** upon which the Court can rely in recommending reversal of the March 28 Order.

---

nonsensical. "Patent" is a much broader term designed to capture documents that an academic professor like Dr. Swanson would utilize.

[13] This was determined using the search term calculation methodology outlined in the Federal Circuit's Guidelines on e-Discovery. CAFC Guidelines Model Order at 3-4.

[14] Other than misrepresentations of discussions between the parties, ALZA has presented no evidence of such an agreement.

**The Prejudice to Claim Construction is Merely Pretextual:** As explained above, ALZA has been unwavering in its desire to prevent this case from entering the claim construction phase, whether to avoid the associated costs, or for some other unstated reason. From multiple schedule delays beginning in September 2012 through March 2013 to manufacturing this discovery dispute in June 2013.

**ALZA Filed Three Unrelated Patent Infringement Lawsuits in June 2013, And Under Rule 11, Was Required to Interpret Its Claims:** Since ALZA started its campaign to circumvent Judge Hamilton's March 28 Order by demanding immediate production of Dr. Swanson's ESI on June 27, 2013, ALZA has failed to identify to Dr. Swanson one class of document, request for production, or any of its 89 search terms that would constitute the "extrinsic evidence" it claims it so badly needs to engage in claim construction. This is not surprising since, prior to June 27 when it finally revealed its campaign against the March 28 Order, ALZA filed three infringement lawsuits on June 19, June 24, and June 26.[15] Under Federal Rule of Civil Procedure 11, ALZA should have already interpreted its claims. See *Q-Pharma, Inc. v. Andres Jergens Co.*, 360 F.3d 1295, 1301-02 (Fed. Cir. 2004) ("In the context of patent infringement actions, . . . Rule 11 [requires], at a minimum, that an attorney interpret the asserted patent claims . . . .") These lawsuits undoubtedly will include claim construction proceedings which will follow Judge Hamilton's January 2014 hearing. ALZA therefore should have already construed its claims and can suffer no prejudice at the hands of Dr. Swanson.

**A Damaged FedEx Envelope Reveals That ALZA's Position is Pretextual:** ALZA tellingly demonstrated that its protestations of prejudice are simply a pretext designed to obtain a stay in claim construction dates. ALZA requested rolling discovery to which Dr. Swanson complied. On July 16, 2013, Dr. Swanson notified ALZA that his first production of ESI would be on July 19, 2013, and on that date Dr. Swanson produced over 10,000 pages of documents. **Four days** after receipt of Dr. Swanson's production, ALZA informed Dr. Swanson via a voicemail message that the envelope in which the production DVD was delivered had been badly damaged during delivery, and ALZA required a replacement disc.[16]

If ALZA were truly interested in reviewing Dr. Swanson's ESI for the extrinsic evidence it claims it so desperately needs, it surely would have immediately noticed that the envelope containing the production DVD had been badly damaged, investigated the status of the contents inside, and contacted Dr. Swanson promptly. Coupled with the fact that Dr. Swanson notified ALZA of the delivery three days in advance, this undermines ALZA's purported interest in timely reviewing Dr. Swanson's ESI. Instead, it is telling of ALZA's true intent—to use a concocted discovery "dispute" to delay claim construction and this litigation at any cost.

---

[15] *Alza Corp., et al. v. Par Pharm., Inc., et al.*, Case No. 13-cv-01104-RGA (D. Del. Jun. 19, 2013); *Alza Corp., et al. v. Osmotica Kereskedelmi Es Szolgaltato KFT, et al.*, Case No. 13-cv-01126-RGA (D. Del. Jun. 24, 2013); and *Alza Corp., et al. v. Osmotica Kereskedelmi Es Szolgaltato KFT*, Case No. 13-cv-04668-EEB (N.D. Ill. Jun. 26, 2013).

[16] Dr. Swanson promptly provided a replacement disc at the parties' July 26 meet and confer.

      Claim Construction Disputes Are Resolved Primarily with Intrinsic Evidence: ALZA has failed to identify any class of extrinsic evidence it requires to exchange terms, other than "extrinsic evidence [that] *may* be important" and "documents [that] will *likely* undercut [Dr. Swanson's] claim construction positions." ALZA has in hand over 600,000 pages of Dr. Swanson's ESI. This, coupled with ALZA's undefined "extrinsic evidence" is not enough to force Judge Hamilton to reschedule her claim construction hearing date.

      Relevant legal authority also undermines ALZA's position. "In most situations, analysis of . . . intrinsic evidence alone will resolve claim construction disputes . . . The court may also, though, consider extrinsic evidence, such as dictionaries or technical treatises, especially if such sources are 'helpful in determining the true meaning of language used in the patent claims.'" *Mycone Dental Supply Co. v. Creative Nail Design, Inc.*, 2013 U.S. Dist. LEXIS 98600 at \*11 (N.D. Cal. Jul. 12, 2013) (citations omitted). ALZA has identified no concrete categories of extrinsic evidence to guide Dr. Swanson or the Court.

**ALZA's Actions Violate Multiple Tenants of the ND Cal and CAFC Guidelines and ALZA Should Not Be Rewarded For Its Gamesmanship**

      ALZA's Demand of 89 Search Terms Is So Onerous That Its Only Purpose is to Ensure A Delay in Claim Construction: ALZA has made overly broad and unreasonable demands on Dr. Swanson, particularly with respect to its insistence that his entire ESI be searched with an unheard of 89 terms. This contravenes both the CAFC and ND Cal Guidelines. The CAFC Guidelines advocate five terms per custodian with respect to e-mail, and requests for production that are clearly delineated between documents and e-mail. CAFC Guidelines at 2-3. ALZA has conformed to neither. The ND Cal Guidelines also advocate discovery proportionality. ND Cal Guideline 1.03. This includes "the burden or expense of the proposed discovery compared to its likely benefit" as well as "the parties' resources." Eighty-nine new search terms is overly burdensome for a benefit that ALZA has not made clear, particularly in light of the 600,000 ESI pages produced to it. Moreover, Dr. Swanson is an individual public employee professor without the vast resources that ALZA has readily available.

      ALZA Has Refused To Share Its Own Search Terms: ALZA's demands are particularly egregious in light of its refusal to share its own search terms with Dr. Swanson. On multiple occasions, Dr. Swanson has requested ALZA's search terms, with no response. ALZA has not even informed Dr. Swanson if it ran searches or produced documents from its own ESI. This is in violation of ND Cal Guideline 1.02 which states that the "Court expects cooperation on issues relating to the . . . search, review, and production of ESI." Dr. Swanson has been cooperative, sharing his search terms, offering to negotiate on a limited set of additional search terms, and disclosing his ESI sources. ALZA has not, and should not be rewarded for its stonewalling.

      ALZA Has Misrepresented Facts From the Parties' Meet and Confer Sessions: Dr. Swanson never represented that his ESI contains the "most critical" or "most important" information. This is pure hyperbole from ALZA, designed to concoct prejudice. The "most important" and "most critical" information has been in the hands of ALZA since the filing of the amended complaint. Dr. Swanson's representations at the July 8, 2013 meet and confer were that the electronic information

may contain more relevant and important documents than what had been found in a June 2013 review of the remainder of Dr. Swanson's hard copy documents.

<u>Final Position</u>: Dr. Swanson has produced nearly 750,000 pages of documents to ALZA, inventorship contentions, invalidity contentions, and agreed to a 14 hour deposition, whereas ALZA did its best to hide Dr. Swanson when he earlier testified for ALZA. ALZA has produced a set of documents that is a mere reproduction of documents produced in prior lawsuits.

The fishing expedition designed to circumvent Judge Hamilton's Order must end. Dr. Swanson respectfully requests that the Court deny ALZA's requests in their entirety because ALZA's position is meritless, and ALZA's actions have been especially egregious and in violation of both the ND Cal and CAFC Guidelines for e-discovery.

Respectfully submitted,

/s/ *Kurt G. Calia*                                    /s/ *Gerald P. Dodson*
Kurt G. Calia                                                 Gerald P. Dodson
COVINGTON & BURLING LLP                 CARR & FERRELL LLP
*Attorney for Defendant ALZA Corporation*       *Attorney for Plaintiff Dr. James M. Swanson*

Attachments