United States District Court
Northern District of California

DR. JAMES M. SWANSON,

        Plaintiff,

   v.

ALZA CORPORATION,

        Defendant.

Case No.: CV 12-04579-PJH (KAW)

ORDER REGARDING 8/15/2013 JOINT DISCOVERY LETTER

(Dkt. No. 79)

On July 17, 2013, Defendant ALZA Corporation ("ALZA") filed a motion to compel Plaintiff Dr. James M. Swanson's Production of Documents and to modify the Case Schedule. (Dkt. No. 73.)  On July 19, 2013, the portion of the motion seeking to compel discovery was referred to U.S. Magistrate Judge Kandis A. Westmore for discovery purposes.  On August 15, 2013, the parties filed a joint discovery letter, in which Defendant seeks to compel Plaintiff's application of ALZA's search terms to his electronically stored information (ESI), to produce any non-duplicative, non-privileged documents, and to compel Plaintiff to update his responses to Interrogatory Nos. 1 and 2. (8/15/13 Joint Letter, "Joint Letter," at 4.) [1]

On September 19, 2013, the Court held a hearing, and after consideration of the joint letter and the parties' arguments, and for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendant's request to compel Plaintiff to apply its search terms to his ESI.  At the hearing, Defendant withdrew its request to compel supplemental responses to Interrogatory Nos. 1 and 2, so that dispute has been resolved.

///

---

[1] Defendant also asks the undersigned to recommend to the presiding judge that the claim construction deadlines be suspended. (Joint Letter at 4.) This is explicitly beyond the purview of the referral, so the undersigned will not address that request, as that issue remains before the presiding judge. (*See* Dkt. No. 75.)

1

## I.   BACKGROUND

2

Plaintiff Dr. James M. Swanson is an Emeritus Professor of Pediatrics at University of

3

California, Irvine.  (First Am. Compl., "FAC," ¶ 7.)  On December 6, 1993, Plaintiff met with and

4

presented his work on ADHD, including his unique work on the pharmacokinetics and

5

pharmacodynamics of stimulant medications used to treat ADHD, at Defendant ALZA's office in

6

Palo Alto, CA. (FAC ¶ 38.)  Defendant required Plaintiff to sign a consultant agreement prior to

7

the meeting, and Plaintiff complied. (FAC ¶¶ 47, 50.)

8

After the December 6, 1993 meeting, Plaintiff was named the principal investigator in

9

charge of carrying out the first sipping study.  Plaintiff alleges that he wrote much of the protocol

10

that was developed for the study, using the laboratory school protocol that Plaintiff had developed

11

for his previous studies. (FAC ¶ 57.)  Subsequently, Defendant filed provisional patent

12

applications in 1995 and 1996.  (FAC ¶¶ 65-66.)

13

Plaintiff did not discover that Defendant had obtained patents for his alleged inventions

14

until April 2011, when he was deposed in connection with the litigation of *ALZA v. Kremers*

15

*Urban, LLC,*  Case No. 10-23-LPS (D. Del). (FAC ¶ 94.)

16

On August 30, 2012, Plaintiff filed the original complaint in this action, and filed the first

17

amended complaint on November 14, 2012.  On April 19, 2013, Defendant served Plaintiff with

18

its initial discovery requests.  (Joint Letter at 2.)

19

Between June and August 9, 2013, Plaintiff produced nearly 750,000 pages of documents

20

to Defendant on a rolling basis, of which more than 600,000 pages are from ESI sources. (Joint

21

Letter at 5.)

22

On July 8, 2013, the parties met and conferred regarding possible additional search terms

23

designed to capture further documents responsive to Defendant's requests.  (Joint Letter at 6.)  On

24

July 17, 2013, Defendant filed a motion to compel (Dkt. No. 73.) demanding that its new terms be

25

utilized to search Plaintiff's ESI.  (Joint Letter at 7.)   On July 22, 2013, Plaintiff objected to this

26

demand.  *Id.*

27

28

United States District Court
Northern District of California

2

After the referral of the motion to compel, the Court ordered the parties to meet and confer and, if necessary, to file a subsequent joint letter outlining any remaining discovery disputes consistent with the Standing Order. (Dkt. No. 78.)

The parties met and conferred on July 26, 2013 without resolution. (Joint Letter at 7.) Plaintiff last produced documents on August 9, 2013. (Joint Letter at 5.) Plaintiff states that he attempted to further meet and confer on August 13, 2013, prior to the filing of the joint letter, but ALZA refused. (Joint Letter at 5 n. 8.)

On August 15, 2013, the parties filed the instant joint letter concerning the application of Defendant's proposed search terms to Plaintiff's ESI. On August 27, 2013, the Court set the hearing date for the joint letter and ordered the parties to provide supplemental information to assist in the resolution of the underlying dispute, including Plaintiff's applied search terms and ALZA's proposed search terms. (Dkt. No. 80.) Both parties filed supplemental information with the Court. (*See* Pl's Decl. of Gerald P. Dodson, "Dodson Decl.," Dkt. No. 81; Pl.'s Decl. of Bryan J. Boyle, "Boyle Decl.," Dkt. No. 82; Def.'s Supplement to Joint Discovery Report, "Def.'s Supplement," Dkt. No. 83.)[2]

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure broadly interpret relevancy, such that each party has the right to the discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

The scope of electronically stored information (ESI) is further limited, such that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. Fed. R. Civ. P. 26(b)(2)(B).  In addition, the Northern District Guidelines for the Discovery of Electronically Stored Information ("N.D. Cal. Guidelines") provides additional guidance for ESI discovery.

---

[2] ALZA used the opportunity to provide unsolicited, supplemental information to further brief the ESI discovery dispute. The Court will not consider this additional information in its resolution of this dispute.

The Northern District Guidelines advocate for the proportionality set forth in Rule 26(b)(2)(C) and 26(g)(1)(B)(iii).  Parties should consider factors that "include the burden or expense of the proposed discovery compared to its likely benefit, and discovery requests for production of ESI should be reasonably targeted, clear, and as specific as practicable." (N.D. Cal. Guidelines ¶ 1.03.)  The Guidelines further recommend "[t]he phasing of discovery so that discovery occurs first from sources most likely to contain relevant and discoverable information and is postponed or avoided from sources less likely to contain relevant and discoverable information." *Id.* at ¶ 2.02(d).

Regardless, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (2) the party seeking discovery in has had ample opportunity to obtain the information by discovery in the action; or (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

## III. DISCUSSION

As an initial matter, Judge Hamilton's March 28 Minute Order from the Case Management Conference simply states that "Discovery is open."  In the absence of any other clarifying order, the parties should understand this to mean that discovery is ongoing and without limitation.

Since the Court has not been imbued with the responsibility of determining the propriety of the existing claim construction deadlines, this order is limited to the following issues: (1) whether Plaintiff should be compelled to apply ALZA's proposed search terms; and (2) whether Plaintiff should be compelled to update his responses to Interrogatory Nos. 1 and 2.

## A.  Application of Defendant's Search Terms to Plaintiff's ESI

At issue is whether Plaintiff should be compelled to apply Defendant's proposed search terms to the search of his ESI.  Plaintiff characterized Defendant's request as proposing 89

United States District Court
Northern District of California

United States District Court
Northern District of California

1   additional terms.  Defendant characterized its request as only equating to 25 additional search

2   "terms," but, in actuality, these 25 "terms" are distinct searches containing multiple terms and

3   Boolean operators.

4        Defendant alleges that Plaintiff has not complied with its requests for production, because

5   the search terms used to identify potentially relevant documents were inadequate.  (Joint Letter at

6   2.)  Defendant believes that Plaintiff's search terms should have included each of the named

7   inventors, the numbers of ALZA's patents and the applications which led to them, and the name

8   of Plaintiff's alleged corroborators.  *Id.*  In response to the Court's August 27 Order, ALZA

9   provided its list of 11 "terms," narrowed from the original 25 "terms" provided to Plaintiff on July

10  17, 2013. (Def.'s Supplement at 6-8.)

11       Plaintiff objects to the application of Defendant's search terms on the grounds that the

12  terms are overly broad and unreasonable and contravene the Northern District Guidelines. (Joint

13  Letter at 9.)[3]  At the hearing, Plaintiff clarified that it would be an undue burden to perform the 11

14  searches, and, after reviewing ALZA's list of "terms," the Court understands Plaintiff's reluctance

15  to run all of Defendant's proposed searches in light of burden involved in running each search.

16  At the hearing, Plaintiff's counsel explained that his firm ran two sample ESI searches, which

17  took 34 hours and 51 minutes, and 23 hours and 58 minutes, respectively.  Further, after the

18  documents are identified, they have to undergo review for privilege purposes prior to production.

19       Although the parties did not agree upon the relevant search terms after several meetings, a

20  party's suspicion that all responsive documents have not been produced, without more, is

21  generally insufficient to warrant an order compelling production.  *See FormFactor, Inc. v. Micro-*

22  *Probe, Inc., No. C-10-03095, 2012 WL 1575093, at 7 (N.D.Cal. May 3, 2012)* (holding that a

23  party has to make a showing of what specific documents have been withheld and why those

24  documents are relevant).  It is unclear, from Defendant's arguments in the joint letter, what

25

26  [3] Plaintiff also cites the Federal Circuit's Model Order on E-Discovery in Patent Cases in support
    of its position.  Those guidelines, however, have since been removed from the Federal Circuit's
27  website, as they were created by an advisory committee and were not ultimately adopted by the
    Federal Circuit.  Nonetheless, the Northern District Guidelines provide sufficient guidance for the
28  purposes of resolving this dispute.

United States District Court
Northern District of California

1    relevant documents—expected to be produced in a reasonable search—are missing.  At the

2    hearing, Defendant identified specific categories of documents that it believed were missing from

3    the rolling production, including documents that pertain to dosing profiles and treatment patterns,

4    which are the ways that Concerta improves on other methylphenidate formulations.

5         The Northern District Guidelines contemplate that the parties will cooperate on issues

6    relating to the production of ESI, such as limiting ESI discovery requests and reasonably

7    responding to ESI discovery requests.  To date, Plaintiff has produced over 600,000 pages of ESI

8    and 150,000 pages of documents.  According to Plaintiff, the last date of his rolling production

9    was August 9, 2013. (Joint Letter at 7.)  At the hearing, Defendant indicated that it was still

10   reviewing Plaintiff's document production, but that the sample searches run by Plaintiff indicates

11   that relevant documents were missing from Plaintiff's rolling production.

12        At the hearing, Defendant requested that Plaintiff either give it access, as previously

13   offered, to Plaintiff's ESI database to run Defendant's own search, or to employ Defendant's 11

14   remaining searches utilizing Boolean connectors.  While Plaintiff stated that he was no longer

15   willing to turn over the entire database, the Court was not persuaded by Plaintiff's argument that

16   running modified searches would place such an undue burden as to relieve Plaintiff of his

17   obligation to produce responsive documents.  Plaintiff argued that the application of Boolean

18   searches was unprecedented.  This is actually not the case, and given the availability of

19   technology, Boolean searches will undoubtedly become the standard, if, for no other reason, to

20   limit ESI documents to those most likely to be relevant to pending litigation. *See POM Wonderful*

21   *LLC v. The Coca-Cola Co.,* 2009 WL 7047720, at *1 (C.D. Cal. Nov. 10, 2009).

22        While Defendant has not shown that it should be entitled to have all 11 searches

23   performed, the Court is persuaded that it would not be unduly burdensome for Plaintiff to perform

24   the searches below in light of Plaintiff's unwillingness to produce its ESI database.

25   ///

26   ///

27   ///

28   ///

1. <u>Test Searches Already Performed by Plaintiff</u>

At the hearing, Defendant provided an email from Plaintiff's counsel Bryan Boyle (dated September 18, 2013), specifying the two test searches[4] that were run by Plaintiff and the results of each. Although Plaintiff altered the test string searches, one of the searches narrowed the search to avoid duplication of documents previously produced, and the other was broader than Defendant's request, thereby capturing more information. The Court finds that the searches were sufficient, in spite of any alteration. The Court orders Plaintiff to "de-duplicate" the files from those two searches to filter out those documents that have already been provided in previous productions, and produce any non-privileged documents that are responsive to Defendant's requests.

2. <u>Search: *Suneel* OR *Gupta*</u>

Defendant requests the Boolean search "*Suneel* OR *Gupta*" be applied. Neither term was previously applied by Plaintiff to his ESI, even though Dr. Suneel Gupta, one of the named inventors, worked extensively with Plaintiff during the initial stages of development, including the first "sipping study" and subsequent studies. Defendant believes that the search string would, therefore, produce highly relevant documents. Therefore, Plaintiff is ordered to apply the proposed Boolean search to his ESI. Additionally, as with the search above, Plaintiff will de-duplicate the files to avoid producing documents that have been previously produced.

3. <u>(tid OR t.i.d. OR td OR t.d. OR "three-times- a-day" OR (thrice /5 daily) OR ("three times" /5 (daily OR day)))</u>

Plaintiff alleges that his work on methylphenidate and its release profiles directly shows that he is the true inventor of Concerta. Moreover, Plaintiff claims that he knew the optimal pattern for treatment of ADHD was three times a day before he ever met with anyone from ALZA. Plaintiff has not employed any of the search terms included in this Boolean search string to his ESI database. At the hearing, Defendant stated that these were terms of art, and so this

---

[4] Plaintiff performed the following searches: "Ascend NOT (methylphenidate OR MPH OR Ritalin OR Concerta OR ALZA)"; and "(contract OR agreement OR protocol OR letter OR amendment OR assign OR consult) AND (UC OR University OR Regents OR Irvine OR UCI OR (U NEAR Cal))"

United States District Court
Northern District of California

search is reasonably calculated to capture additional information that has not been discovered and relevant to the parties' dispute.  Therefore, Plaintiff is ordered to apply the proposed Boolean search to his ESI.  Additionally, as with the searches above, Plaintiff will de-duplicate the files to avoid producing documents that have been previously produced.

4.  <u>(bid OR b.i.d. OR bd OR b.d. OR "two-times-a-day" OR (twice /5 daily) OR ("two times" /5 (daily OR day)))</u>

As above, Plaintiff alleges that through his research of methylphenidate he learned that the current dosage of twice a day (BID) dosing regimen was inadequate and recommended a three times a day (TID) regimen to Defendant.  Plaintiff has not employed any of the search terms included in this Boolean search string in his ESI database.  This search string may be important because it could capture additional information that has not been discovered and relevant to the parties' dispute.  Plaintiff is ordered to apply the proposed Boolean search to his ESI. Additionally, as with the searches above, Plaintiff will de-duplicate the files to avoid producing documents that have been previously produced.

5.  <u>Searches that will not be performed</u>

The Court declines to order Plaintiff to apply ALZA's six other proposed searches to his ESI, because they are likely to result in duplicative documents, thereby rendering any benefit outweighed by the burden of production.  In regard to Defendant's proposed searches regarding the additional inventors,[5] the Court finds them unnecessary and duplicative.  First, the other inventors do not appear to have worked extensively with Plaintiff, rather Dr. Gupta worked most closely with him, such that information related to the other inventors would have been captured or will be captured through the Gupta search combined with those documents that contain "ALZA," a search term already employed by Plaintiff.  Plaintiff's search of "ALZA" should have captured any emails that were exchanged between the inventors or Plaintiff and any other ALZA employees.  Since these searches are likely to produce duplicative documents, the benefit of running the additional searches is outweighed by the burden.

---

[5] The other searches concerning the named inventors were as follows: "(Carol AND Christopher OR ALZA) OR (Christopher and ALZA);" and "(Diane AND Guinta OR ALZA) OR *Guinta*".

In regard to ALZA's proposed searches based on the names of Plaintiff's alleged collaborators,[6] their respective last names have already been applied to Plaintiff's ESI, so these searches are likely to produce duplicative documents, such the potential benefit is far outweighed by the burden.

The Patents-in-Suit and the Patent Application numbers, contained in Defendant's eleventh proposed search, are unlikely to lead to the discovery of further admissible evidence, because Plaintiff contends that he did not know that ALZA obtained any patents prior to his 2011 deposition. Further, "patent" was one of the search terms already run by Plaintiff, and those documents, which likely include the patent application numbers sought, have already been produced as part of Plaintiff's rolling ESI production.

In light of the above, the Court declines to order Plaintiff to apply ALZA's remaining seven remaining searches to his ESI, as any benefit is outweighed by the burden of production.

**B. Interrogatory Nos. 1 and 2**

Additionally, ALZA sought an order "compelling Plaintiff to update his responses to Interrogatories [sic] Nos. 1 and 2 by September 20, 2013." (Joint Letter at 3-4.) At the hearing, however, ALZA, withdrew its request. As to Interrogatory No. 1, Defense counsel stated that it would instead serve an additional interrogatory directly addressing the information that it believed was missing from Plaintiff's response. As to Interrogatory No. 2, Defense counsel stated that he was satisfied with Plaintiff's counsel's statements on the record and was no longer seeking additional supplementation at this time.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's request to compel Plaintiff to apply its search terms to his ESI is GRANTED IN PART AND DENIED IN PART, as set forth above. Each search run by Plaintiff shall be de-duplicated prior to the document production to ensure that the identified documents have not been previously produced.

---

[6] Marcel Kinsbourne OR *Kinsbourne* OR Marcel; *Wigal* OR Tim AND (UC OR UCI OR Regents OR Irvine OR (U*/5 Cal*) OR Sharon AND (UC OR UCI OR Regents OR Irvine OR (U*/5 Cal*); *Lerner* OR Marc AND (UC OR UCI OR Regents OR Irvine OR (U* /5 Cal*).

United States District Court
Northern District of California

The parties shall meet and confer in good faith to resolve any outstanding disputes prior to seeking further court intervention, with particular attention paid to the Northern District Guidelines to assist them in their meet and confer efforts to resolve any further ESI disputes.

IT IS SO ORDERED.

DATE: October 7, 2013

KANDIS A. WESTMORE
United States Magistrate Judge

10